David H. Krieger, Esq.
Nevada Bar No. 9086
Shawn W. Miller, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Tel: (702) 880-5554
Fax: (702) 385-5518
dkrieger@hainesandkrieger.com
smiller@hainesandkrieger.com

*Attorneys for Plaintiffs*
*TRAVIS VANOOSTENDORP*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TRAVIS VANOOSTENDORP, | Case No. : 2:18-cv-02121-RFB-CWH |
| Plaintiffs, | |
| v. | **STIPULATION AND ORDER TO AMEND THE COMPLAINT** |
| EQUIFAX INFORMATION SERVICES, LLC, BANK OF AMERICA, N.A., | **(First Request)** |
| Defendants. | |

Plainitff TRAVIS VANOOSTENDORP ("Plaintiff") and Defendant BANK OF AMERICA, N.A. ("BOA"), collectively the "Parties"[1], respectfully submit the following Stipulation permitting the Plaintiff to file a Second Amended Complaint (hereinafter "SAC", attached hereto as **Exhibit "1"**).

Further, the Parties agree that filing the SAC moots BOA's pending Motion to Dismiss. Acorrdingly, BOA withdraws its pending Motion to Dismiss [ECF Docket #9] and Plaintiff withdraws its Response [ECF Docket #12]. The SAC does not in any way waive or restrict Defendants' right to timely move to dismiss the claims in the SAC or waive or restrict Plaintiff's right to respond.

IT IS SO STIPULATED this February 12, 2019.

/s/ Shawn W. Miller
Shawn W. Miller, Esq.
David H. Krieger, Esq.
Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
*Attorneys for Plaintiff,*
*Travis Vanoostendorp*

/s/ Rex D. Garner
Rex D. Garner, Esq.
Akerman LLP
1635 Village Center Circle
Suite 200
Las Vegas, NV 89134
*Attorneys for Defendant,*
*Bank of America, N.A.*

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

---

[1] Equifax Information Services, LCC ("Equifax") is a named party in this case but has not entered an appearance and Plaintiff has reached a settlement with Equifax.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ORDER**

IT IS SO ORDERED that this Stipulation and Order to Amend the Complaint is hereby GRANTED.

IT IS FURTHER ORDERED, that the Plaintiff shall file the SAC within seven (7) of entry of this Order.

IT IS FURTHER ORDERED that the Motion to Dismiss filed by BOA [ECF Docket #9] and Plaintiff's Response [ECF Docket #12] are hereby withdrawn. This Order shall not in any way waive or restrict Defendants' right to timely move to dismiss the claims in the SAC or waive or restrict Plaintiff's right to respond.

IT IS SO ORDERED:

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

DATED this 13th day of February, 2019.

# EXHIBIT "1"

David H. Krieger, Esq.
Nevada Bar No. 9086
Shawn W. Miller, Esq.
Nevada Bar No. 7825
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
dkrieger@hainesandkrieger.com
smiller@hainesandkrieger.com

Attorney for Plaintiff
*TRAVIS D. VANOOSTENDORP*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TRAVIS D. VANOOSTENDORP,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, BANK OF AMERICA, N.A.<br><br>Defendants. | Civil No.: 2:18-cv-02121-RFB-CWH<br><br>**SECOND AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff, TRAVIS D. VANOOSTENDORP ("Plaintiff" or "Borrower"), by and through his counsel, hereby files this First Amended Complaint against EQUIFAX INFORMATION SERVICES, LLC ("Equifax") and Bank of America, N.A. ("BOA") (jointly with Equifax, "Defendants") and alleges as follows:

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

1.      Plaintiff brings this action against Equifax and BOA for failing to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"); the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*

2.      This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36, *et seq.*, of Regulation X.

3.      Plaintiff is asserting claims for relief against BOA for breaches of specific rules under Regulation X, as set forth, *infra.*  Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

4.      This Court has federal question jurisdiction because this case arises out of violations of federal law, including FCRA, DFA, and RESPA. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

5.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, Nevada and because Defendants are subject to personal jurisdiction in

Clark County, Nevada; Defendants conduct business in Clark County, Nevada; the events giving rise to this action occurred in Clark County, Nevada; and Defendants are registered with the Nevada Secretary of State.

PARTIES

6.     Plaintiff is a natural adult person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7.     Equifax is a Georgia limited liability company registered in Nevada as a foreign limited liability company and conducts business in Clark County, Nevada.   Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.   Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

8.     BOA is a federally chartered bank and conducts business in Clark County, Nevada.   BOA is a furnisher of information as contemplated by 15 U.S.C. §1681s-2(b) which regularly and in the ordinary course of business furnishes information to consumer reporting agencies.

9.     Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs,

successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## GENERAL ALLEGATIONS

10.     Plaintiff is the owner of real property located at and commonly known as 4419 Crimson Leaf Drive, Las Vegas, NV 89130 (the "Property").

11.     Plaintiff, at all times relevant, has maintained and currently maintains the Property as Plaintiff's primary, principal residence.

12.     BOA is the servicer of a purported home-equity line of credit loan (HELOC), secured by a second priority revolving credit deed of trust (DOT) on the Property (the HELOC loan and DOT shall be collectively referred to hereinafter as the "Loan" or "Debt").

13.     The Loan constitutes a "federally related mortgage loan" as that term is defined in 12 C.F.R. §1024.2(b).

14.     BOA is subject to Regulation X and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor does BOA qualify for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

15.     BOA has been the servicer of the Loan at all times since the Loan origination on or about January 10, 2005.

16.     On or about April 8, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. § 1301 et seq. Plaintiff's case was assigned Case Number 11-15252-leb (the "Bankruptcy").

17.     BOA was notified of the Bankruptcy and actively participated in the Bankruptcy by filing notices and documents with the Bankruptcy Court in Plaintiff's case.

### BOA's Bankruptcy Accounting Practices

18.     On or about June 21, 2011, BOA filed a proof of claim in the Bankruptcy.  The proof of claim asserted that as of April 8, 2011 ("Bankruptcy Petition Date"), the past due amount on the Loan was $1,866.88 and the principal balance of the Loan was $98,898.42.  *See* Proof of Claim #4 in Case No. 11-15252-leb.

19.     On May 9, 2014, the Bankruptcy Court entered an order ("Confirmation Order") confirming Plaintiff's Chapter 13 plan ("Confirmed Plan").  *See* Doc 87 in Case No. 11-15252-leb.

20.     Pursuant to the Confirmed Plan, the $1,866.88 owed to BOA was to be repaid, in full, at an interest rate of 0.00%, during the 60 month term of the Confirmed Plan.

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

21.     Pursuant to the Confirmed Plan, Plaintiff was also obligated to maintain the Loan through regular monthly contractual payments.

22.     BOA's filed proof of claim created a "fresh" starting point to account for Plaintiff's payments.

23.     Plaintiff made his first regular maintenance payment to BOA, which was received by BOA on May 9, 2011 in the amount of $300.00, but BOA failed to properly account for and apply Plaintiff's payment to the Loan.

24.     The May 9, 2011 payment was enough to pay the accrued interest from April 8, 2011 to May 9, 2011 ($272.99) and the principal balance should have been reduced by $27.01.  BOA miscalculated the interest ($264.18) and failed to reduce the principal.  It is not clear what BOA did with the $27.01 ($35.82), applying it to "Misc Posting", but it is clear it was not applied to principal like it should have been applied.

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/09/2011 | REGULAR PAYMENT | 264.18 | 06/2011 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/09/2011 | MISC. POSTING | 35.82 | 06/2011 | .00 / 98,898.42 | 35.82 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

25.     The same accounting problem happened in June 2011.  Plaintiff made his June 2011 payment, which was received by BOA on June 6, 2011 in the amount of $522.99.

26.     The June 2011 payment was enough to pay the accrued interest from May 9, 2011 to June 6, 2011 ($246.50) and the principal balance should have been

reduced by $276.49. BOA miscalculated the interest ($264.18) and failed to reduce the principal. It is not clear what BOA did with the $276.49 ($258.81) applying it to "Misc Posting", but it is clear it was not applied to principal like it should have been applied.

| 06/06/2011 | REGULAR PAYMENT | 264.18 | 07/2011 | .00 98,896.42 | 264.18 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/06/2011 | MISC. POSTING | 258.81 | 07/2011 | .00 98,896.42 | 258.81 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

27.     Further, during the first six months of the Bankruptcy, BOA started adding random improper fees to the Loan, and engaged in other improper accounting and Loan payment applications.

28.     BOA charged the following fees without any description or reason why the fees were charged. Specifically, BOA charged the following: $250 on 4/15/2011; $787.75 on /3/2011; $125.00 on 8/10/2011; $78.00 on 9/7/2011; $599.25 on 9/9/2011; and $15, $200, $360 and $18 on 10/18/2011.

29.     Interestingly, these fees show up on BOA's Account transaction History, but they do not show at all on BOA's Life of Loan account sheet. Compare the following:

///

///

///

///

-7-

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

## Account Transaction History

Customer Name - **TRAVIS D VANOOSTENDORP**
Account Number - _____6899

| Effective Date | Posting Date | Description | Transaction Amount | Principal | Interest | Fees | Balance |
|---|---|---|---|---|---|---|---|
| 05/09/2011 | 05/11/2011 | Regular Pmt | $300.00 | $0.00 | $300.00 | $0.00 | $98,898.42 |
| 06/06/2011 | 06/06/2011 | Regular Pmt | $522.99 | $0.00 | $522.99 | $0.00 | $98,898.42 |
| 07/13/2011 | 07/13/2011 | Regular Pmt | $264.18 | $0.00 | $264.18 | $0.00 | $98,898.42 |
| 08/03/2011 | 08/03/2011 | Fee Assessed | $787.75 | $0.00 | $0.00 | $787.75 | $98,898.42 |
| 08/10/2011 | 08/10/2011 | Fee Assessed | $125.00 | $0.00 | $0.00 | $125.00 | $98,898.42 |
| 08/15/2011 | 08/15/2011 | Regular Pmt | $272.98 | $0.00 | $272.98 | $0.00 | $98,898.42 |
| 09/07/2011 | 09/07/2011 | Fee Assessed | $78.00 | $0.00 | $0.00 | $78.00 | $98,898.42 |
| 09/09/2011 | 09/09/2011 | Fee Assessed | $599.25 | $0.00 | $0.00 | $599.25 | $98,898.42 |
| 09/23/2011 | 09/23/2011 | Regular Pmt | $264.18 | $0.00 | $264.18 | $0.00 | $98,898.42 |
| 10/18/2011 | 10/18/2011 | Fee Assessed | $15.00 | $0.00 | $0.00 | $15.00 | $98,898.42 |
| 10/18/2011 | 10/18/2011 | Fee Assessed | $200.00 | $0.00 | $0.00 | $200.00 | $98,898.42 |
| 10/18/2011 | 10/18/2011 | Fee Assessed | $360.00 | $0.00 | $0.00 | $360.00 | $98,898.42 |
| 10/18/2011 | 10/18/2011 | Fee Assessed | $41.00 | $0.00 | $0.00 | $41.00 | $98,898.42 |
| 10/31/2011 | 10/31/2011 | Regular Pmt | $273.00 | $0.00 | $273.00 | $0.00 | $98,898.42 |
| 12/01/2011 | 12/01/2011 | Regular Pmt | $264.18 | $0.00 | $264.18 | $0.00 | $98,898.42 |
| 01/06/2012 | 01/06/2012 | Regular Pmt | $273.00 | $0.00 | $273.00 | $0.00 | $98,898.42 |
| 02/03/2012 | 02/06/2012 | Regular Pmt | $264.18 | $0.00 | $264.18 | $0.00 | $98,898.42 |
| 02/24/2012 | 02/27/2012 | Regular Pmt | $272.81 | $0.00 | $272.81 | $0.00 | $98,898.42 |
| 04/01/2012 | 04/09/2012 | Regular Pmt | $399.30 | $0.00 | $399.30 | $0.00 | $98,898.42 |

**Bank of America**
Home Loans

Page 8

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/09/2011 | REGULAR PAYMENT | 264.18 | 06/2011 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/09/2011 | MISC. POSTING | 35.82 | 06/2011 | .00 / 98,898.42 | 35.82 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/06/2011 | REGULAR PAYMENT | 264.18 | 07/2011 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/06/2011 | MISC. POSTING | 258.81 | 07/2011 | .00 / 98,898.42 | 258.81 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/13/2011 | REGULAR PAYMENT | 264.18 | 08/2011 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/15/2011 | REGULAR PAYMENT | 272.98 | 09/2011 | .00 / 98,898.42 | 272.98 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/23/2011 | REGULAR PAYMENT | 264.18 | 10/2011 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/31/2011 | REGULAR PAYMENT | 272.99 | 11/2011 | .00 / 98,898.42 | 272.99 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/31/2011 | MISC. POSTING | .01 | 11/2011 | .00 / 98,898.42 | .01 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/01/2011 | REGULAR PAYMENT | 264.18 | 12/2011 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/06/2012 | REGULAR PAYMENT | 272.99 | 01/2012 | .00 / 98,898.42 | 272.99 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/06/2012 | MISC. POSTING | .01 | 01/2012 | .00 / 98,898.42 | .01 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/03/2012 | REGULAR PAYMENT | 264.18 | 02/2012 | .00 / 98,898.42 | 264.18 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/24/2012 | REGULAR PAYMENT | 254.68 | 03/2012 | .00 / 98,898.42 | 254.68 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/24/2012 | MISC. POSTING | 18.13 | 03/2012 | .00 / 98,898.42 | 18.13 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/01/2012 | REGULAR PAYMENT | 272.24 | 04/2012 | .00 / 98,898.42 | 272.24 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/01/2012 | MISC. POSTING | 127.06 | 04/2012 | .00 / 98,898.42 | 127.06 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/01/2012 | PRINCIPAL ADJUST. | -211.63 | 09/2016 | 211.63 / 98,686.79 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

30.    BOA stated that on September 28, 2012, it waived $2,456 in erroneous fees, but nothing in the Life of Loan shows that $2,456 in fees were waived by BOA.

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/27/2012 | REGULAR PAYMENT | 262.24 | 07/2012 | .00 / 98,449.33 | 262.24 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/06/2012 | REGULAR PAYMENT | 166.73 | 08/2012 | .00 / 98,449.33 | 166.73 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/07/2012 | REGULAR PAYMENT | 104.25 | 08/2012 | .00 / 98,449.33 | 104.25 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/04/2012 | REGULAR PAYMENT | 270.98 | 09/2012 | .00 / 98,449.33 | 270.98 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/04/2012 | REGULAR PAYMENT | 82.48 | 10/2012 | .00 / 98,449.33 | 82.48 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/12/2012 | REGULAR PAYMENT | 270.98 | 11/2012 | .00 / 98,449.33 | 270.98 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/12/2012 | MISC. POSTING | 29.02 | 11/2012 | 29.02 / 98,411.31 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/05/2012 | REGULAR PAYMENT | 82.48 | 11/2012 | .00 / 98,411.31 | 82.48 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/09/2012 | REGULAR PAYMENT | 300.00 | 12/2012 | .00 / 98,411.31 | 300.00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

31.    Additionally, in 2012, BOA also started sending Plaintiff wildly erroneous Payment notices.

32.    Repayment of the Loan was interest only until March 2015.  The average payment notice should have been approximately $250.00 - $270.00 per month.

33.    On December 10, 2011, BOA filed a Notice of Mortgage Payment Change indicating that the payment for December was $880.18 and that the payment for January 2012 was $522.99.  The reason for the changes was "number of days in the billing cycle changed—changed in fees."  December and January have the same number of days and no fees were identified in any BOA accounting records for this month.

34.    On December 10, 2011, BOA filed a Notice of Mortgage Payment Change indicating that the payment for December was $880.18 and that the payment for January 2012 was $522.99. The reason for the changes was "number of days in the billing cycle changed—changed in fees." December and January have the same number of days and no fees were identified in any BOA accounting records for this month. This payment amount was not made in accordance with the HELOC Loan agreement.

35.    On March 8, 2012, BOA filed a Notice of Mortgage Payment Change indicating that the payment for April was $1,059.99. This was three or four times what the rate should have been. BOA's reason for the change was again "number of days in the billing cycle changed—changed in fees." April has fewer days than March, the payment amount should have not gone up, but down. Also, BOA assessed additional mysterious fees that were not disclosed. This payment was not made in accordance with the HELOC Loan agreement.

36.    On April 10, 2012, BOA filed a Notice of Mortgage Payment Change indicating that the payment for May was $388.46. While this was closer to what the actual payment amount, it was still off by over $100. Again, no explanation for the wild swings in monthly payment amounts, except for BOA's "number of days in the billing cycle changed—changed in fees" worthless description. This was not made in accordance with the HELOC Loan agreement.

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

37.   On May 8, 2012, BOA filed another Notice of Mortgage Payment Change indicating that the payment for June was an astronomical $2,507.23. BOA's reason for this is almost as astonishing:  interest rate change (from 4% to 3.25%), number of days (from 31 to 30), and change in fees.  In other words, the interest rate drops and the number of days in the billing cycle drop, so BOA increases the payment more than six fold.  This calculation was not made in accordance with the HELOC Loan agreement.

38.   On June 8, 2012, BOA filed a Notice of Mortgage Payment Change indicating that the payment for July was $2,718.24.  The cryptic reason for this change was "principal balance change—number of days in the billing cycle changed."  The principal balance did not go up, so BOA charged Plaintiff $211.01 interest for the extra day in July (31 days as compared to June's 30 days).  This calculation was not made in accordance with the HELOC Loan agreement.

39.   On July 10, 2012, BOA filed a Notice of Mortgage Payment Change indicating that the payment for July was $2,726.98.  The cryptic reason for this change was simply "number of days in the billing cycle changed."  June and July have the same number of days, so the number of days did not change.  In order for $2,726.98 to be correct, the principal amount of the Loan would need to be $987,938.16, nearly ten times the amount of the actual principal balance of the

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

Loan. This payment calculation was not made in accordance with the HELOC Loan agreement.

40. BOA also filed a Notice of Mortgage Payment Change indicating that the payment for October 2012 was $2,718.24—a tenfold increase over September's payment of $270.98. Once again, the cryptic reason for this change was "number of days in the billing cycle changed—change in fees." s did not change. In order for $2,726.98 to be correct, the principal amount of the Loan would need to be $987,938.16, nearly ten times the amount of the actual principal balance of the Loan. This payment calculation was not made in accordance with the HELOC Loan agreement.

41. Because Plaintiff had been dealing with BOA's horrendous accounting throughout 2011 and 2012, in March 2015 when the Loan draw period expired and P&I payments were required and the payments jumped from approximately $270.00 to approximately $860.00, Plaintiff continued tendering interest only payments until April 2017.

42. Plaintiff believed he was making consistent, timely payment on the Loan during the Bankruptcy.

**FIRST CAUSE OF ACTION**
**BOA'S VIOLATIONS OF RESPA**

43.     Plaintiff restates and incorporates herein all his statements and allegations contained in paragraphs 1 through 42 in their entirely as if fully set forth here.

44.     Plaintiff was shocked and perplexed when he started receiving communications from BOA that he was past due on the Loan.  He believed he was current on the Loan and had consistently tendered each and every installment payment to BOA in a timely manner.

45.     In an effort to discover why BOA was threatening to foreclose on the Property and jeopardize his "fresh start", on or about February 21, 2018, Plaintiff sent written correspondence to BOA titled "*Request for Information Pursuant to 12 C.F.R. §1024.36 and 15 U.S.C. §1641(f)(2) Request for Payoff Statement Pursuant to C.F.R. §1026.36(c)(3)*" ("RFI 1") via certified mail, return receipt requested.

46.     Among other things, RFI 1 requested a summary of credit information BOA had reported to the CRAs, the identity and address of the master servicer, current servicer and current owner of the Loan, a current payoff balance, and a life of loan mortgage transaction history (that shows the mortgage balance, receipt of all payments, and the assessment of fees or charges).

47.     RFI 1 identified the Plaintiff by name, the Plaintiff's social security number, the Property address, and the Loan account number.

-13-

48. Plaintiff sent RFI 1 to the address BOA designated for the receipt of notices of error and requests for information pursuant to 12 C.F.R. §§1024.35(c) and 1024.36(b), respectively (the "Designated Address").

49. BOA received RFI 1 at the Designated Address within one week of mailing.

50. BOA never notified Plaintiff that BOA had received RFI 1 within 5 days (excluding legal public holidays, Saturdays and Sundays) of receiving Plaintiff's RFI 1 in violation of 12 C.F.R. 1024.36(c).

51. BOA never notified Plaintiff of any extension of time to respond to RFI 1 pursuant to 12 C.F.R. § 1024(d)(2)(ii).

52. In response to RFI 1, on or about March 6, 2018, BOA provided an Account Transaction History, however, the Account Transaction History was wrong. The interest owed in May 2011 on the Account Transaction History was $300 and the interest BOA claimed in the Bankruptcy proceeding was $1,866.88. The Account Transaction History also failed to show how Plaintiff's payments were applied and failed to describe the nature of the fees assessed to the Loan.

53. With regard to the other requests for information in RFI 1 (summary of credit reporting information, identity of the master servicer, current service and current owner of the Loan, and failed to provide an accurate payoff statement),

BOA completely failed to respond at all within 30 days (exclusive of legal public holidays, Saturdays and Sundays) as required by 12 C.F.R. §1024.36(d)(2)(i).

54. Despite the multiplicity of accounting discrepancies and BOA's failure to adequately respond to RFI 1, BOA continued threatening foreclosure against Plaintiff.

55. On May 4, 2018, BOA sent a "Notice of intent to accelerate" to Plaintiff, threatening Plaintiff that the Loan was in default and if Plaintiff failed to cure the default before June 13, 2018 may result in acceleration of the Loan and the sale of the Property.

56. Remarkably, the Notice incorrectly stated that stated that Plaintiff had not paid the monthly payment for November 2016 thru May 2018, even though BOA's Account Transaction History showed that many of these payments had been received as follows below:

| Effective Date | Posting Date | Description | Transaction Amount | Principal | Interest | Fees | Balance |
|---|---|---|---|---|---|---|---|
| 11/14/2016 | 11/14/2016 | Regular Pmt | $283.66 | $83.22 | $200.44 | $0.00 | $95,363.80 |
| 12/20/2016 | 12/21/2016 | Regular Pmt | $273.98 | $273.98 | $0.00 | $0.00 | $95,089.82 |
| 01/10/2017 | 01/11/2017 | Regular Pmt | $282.76 | $188.19 | $94.57 | $0.00 | $94,901.63 |
| 01/31/2017 | 01/31/2017 | Regular Pmt | $8.94 | $0.00 | $8.94 | $0.00 | $94,901.63 |
| 02/19/2017 | 02/21/2017 | Regular Pmt | $280.00 | $112.55 | $167.45 | $0.00 | $94,789.08 |
| 03/16/2017 | 03/17/2017 | Regular Pmt | $273.04 | $273.04 | $0.00 | $0.00 | $94,516.04 |
| 04/18/2017 | 04/19/2017 | Regular Pmt | $847.45 | $585.24 | $262.21 | $0.00 | $93,930.80 |
| 05/16/2017 | 05/16/2017 | Regular Pmt | $836.93 | $568.38 | $268.55 | $0.00 | $93,362.42 |
| 06/28/2017 | 06/29/2017 | Regular Pmt | $865.20 | $605.12 | $260.08 | $0.00 | $92,757.30 |
| 06/28/2017 | 06/29/2017 | Regular Pmt | $852.84 | $582.62 | $270.22 | $0.00 | $92,174.68 |
| 08/25/2017 | 08/28/2017 | Regular Pmt | $878.10 | $545.39 | $332.71 | $0.00 | $91,629.29 |
| 08/25/2017 | 08/28/2017 | Regular Pmt | $861.26 | $545.39 | $315.87 | $0.00 | $91,083.90 |
| 10/16/2017 | 10/16/2017 | Regular Pmt | $866.00 | $545.39 | $320.61 | $0.00 | $90,538.51 |
| 12/03/2017 | 12/04/2017 | Regular Pmt | $874.17 | $545.39 | $328.78 | $0.00 | $89,993.12 |
| 12/25/2017 | 12/27/2017 | Regular Pmt | $862.16 | $545.39 | $316.77 | $0.00 | $89,447.73 |
| 02/09/2018 | 02/12/2018 | Regular Pmt | $871.88 | $5545.39 | $326.49 | $0.00 | $88,902.34 |

57.     Plaintiff was anxious and fearful because of BOA's ongoing threats of foreclosure and the prospect of losing his home, also resulted in aggravation, anger, and frustration that BOA would not review the account, provide relevant information, correct the errors or otherwise respond in a meaningful way to Plaintiff, causing Plaintiff emotional distress.

58.     Because of the multitude of errors in Plaintiff's account and BOA's inadequate response to RFI 1, on or about June 29, 2018, Plaintiff sent written correspondence to BOA titled "*Notice of Error Pursuant to 12 C.F.R. §1024.35; and Second Request for Information,*" ("RFI 2" and "NOE 1").  The combined RFI 2 and NOE 1 were sent to BOA certified mail, return receipt requested.

59.     RFI 2 requested the identity and address of the current owner, master servicer and current servicer of the loan; copies of all servicing notes, a copy of the original note, the identity, address and contact information for the custodian of the original loan documents, the last two escrow account analyses, and an accurate payoff statement.

60.     Without the information requested by RFI 1 and RFI 2, Plaintiff remained at a total informational disadvantage concerning the status of the Loan and was unable to conduct a complete review as to the accuracy and completeness of the Loan and BOA's accounting.

-16-

61.    NOE 1 stated that BOA committed an error by failing to apply an accepted payment under the terms of the mortgage loan; improperly charging fess without a reasonable basis to do so; and failing to provide an accurate payoff balance.

62.    Plaintiff's RFI 2 and NOE 1 also instructed BOA to refrain from reporting any adverse information to Credit Reporting Agencies (CRAs) during the 60 days following its receipt of the NOE, as required by 12 C.F.R. § 1024.35(i)(1) while the error investigation was taking place, as follows:

> Further, after receipt of a notice of error, you may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error. See 12 C.F.R. §1024.35(i)(1). I am hereby placing you on notice that all payments which became due after filing my Chapter 13 to present are subject to this notice of error, since I believe I am current with all such payments.
>
> Accordingly, you must desist from furnishing any adverse information regarding any of the above payments for 60 days, which will provide me time to review responsive documents to this notice of error and request for information.

63.    RFI 2 and NOE 1 identified the Plaintiff by name, the Plaintiff's social security number, the Property address, and the Loan account number.

64.    Plaintiff sent RFI 2 and NOE 1 to BOA's Designated Address pursuant to 12 C.F.R. §§1024.35(c) and 1024.36(b), respectively.

65.    BOA received RFI 2 and NOE 1 at the Designated Address on July 3, 2018.

66.    BOA never notified Plaintiff that BOA had received RFI 2 and NOE 1 within 5 days (excluding legal public holidays, Saturdays and Sundays) of

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

receiving Plaintiff's RFI 2 and NOE 1 in violation of 12 C.F.R. §§ 1024.36(c) and 1024.35(d), respectively.

67.     Plaintiff was hopeful of resolving BOA's erroneous accounting. Instead, BOA sent Plaintiff delinquency notice on July 2, 2018; July 18, 2018 and July 25, 2018, threatening Plaintiff that his mortgage loan is delinquent and in danger of foreclosure.

68.     This caused Plaintiff additional anxiety and emotional distress. BOA was threatening foreclosure but Plaintiff was now sick, frustrated, angry and aggravated because BOA would not provide the information Plaintiff needed to review payments and BOA's accounting on the Loan.   Plaintiff had made all payments on the Loan and BOA was trying to foreclose on his home.

69.     Despite all the correspondence from BOA in July 2018, BOA never notified Plaintiff of any extension of time to respond to RFI 2 pursuant to 12 C.F.R. § 1024.36(d)(2)(ii) nor notify Plaintiff of any extension to time to respond to NOE 1 pursuant to 12 C.F.R. §1024.35(e)(3)(ii).

69.     On or about July 11, 2018, BOA provided some information, including a payoff statement (more than four months after Plaintiff had requested it in RFI 1) and the identity of the servicer and owner of the Loan (more than four months after Plaintiff had requested in in RFI 1.

-18-

70.     However, BOA failed to provide the Life of Loan information, which was crucial for Plaintiff to verify the accuracy of the account, within the time limits prescribed in 12 C.F.R. §1024.36.

71.     In fact, it was not until September 12, 2018 that BOA finally provided information that resembled a Life of loan history, more than six months after Plaintiff had requested in in RFI 1 (and more than 2 months after Plaintiff had to request it again in RFI 2) but it contained contradictory information.

72.     The September 12, 2018 correspondence from BOA to Plaintiff stated that the Loan had not been paid since March 1, 2015, yet the life of loan documents showed BOA had received monthly payments on the Loan through September 4, 2018.

73.     BOA also failed to comply with 12 C.F.R. §1024.35.  BOA failed to correct the other errors alleged in NOE 1 regarding misapplied payments and inaccurate fees or perform a reasonable investigation into the matter, or inform Plaintiff that it believed that no error occurred with a reasons for such determination.

74.     Additionally, despite Plaintiff's specific request to the contrary, and in violation of 12 C.F.R. §1024.35(i)(1), BOA continued reporting adverse information during the pendency of the 60 day "safe harbor" period.

75. Specifically, in an Experian consumer credit disclosure dated August 28, 2018, Defendant continued reporting/furnishing negative information regarding the months disputed in direct violation of the safe harbor as follows by indicating numerous erroneous (and adverse) past due payments, each date which was subject to NOE 1's safe harbor:



76. It was therefore impermissible and improper for Defendant to report derogatory information on Plaintiff's Experian credit report during the 60 day "safe harbor" provision of 12 C.F.R. §1024.35(i)(1).

77. Plaintiff has been living with uncertainty for months and it has been very stressful on him personally and has affected his employment. He has suffered sleepless nights and constant stress, frustration and anxiety.

78. BOA's failure to properly respond to Plaintiff's RFIs and NOE have caused Plaintiff continued costs and damages. Indeed, Plaintiff remains unable to conduct a complete accounting and correct BOA's accounting errors while under the threat of foreclosure.

79.  Plaintiff has incurred significant costs in time to prepare, review, mail the RFIs and NOE to BOA, including out of pocket expenses to pay for mailing costs, stamps, paper, ink, along with the anxiety, frustration, anger, lost sleep, concerns about his employment, and emotional distress caused by BOA's failure to respond at the same time BOA was pursuing foreclosure.

## Count 1: Violation of 12 C.F.R. §1024.36

80.  Plaintiff restates and incorporates herein all of the statements and allegations contained in paragraphs 1 through 79 in their entirety, as if fully rewritten here.

81.  12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

82.  RFI 1 and RFI 2 identified the name of the borrower, identified the mortgage loan account, and requested the information detailed above.

83.  12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

84. Plaintiff sent the RFIs to BOA at the Designated Address and BOA received the RFIs within one week of mailing.

85. The RFIs constituted a request for information pursuant to 12 C.F.R. § 1024.36(a) as the RFIs requested information "with respect to the borrower's mortgage loan."

86. Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), BOA was required to provide written correspondence to Plaintiff in response to the RFIs "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the

servicer receives the information request", as contained in the RFIs, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

87.    As set forth above, BOA failed to respond to Plaintiffs requests for information timely and fully, or otherwise request and extension or provide a proper, valid objection as to why BOA was not required to respond by the deadline in violation of 12 C.F.R. § 1024.36(d)(1).

88.    BOA's actions in failing to provide proper written correspondence to Plaintiff in response to the RFIs before deadline, constitutes willful violations of 12 C.F.R. § 1024.36(d).

89.    BOA impermissible and intentionally reported derogatory information on Plaintiff's Experian credit report during the 60 day "safe harbor" provision in violation of 12 C.F.R. §1024.35(i)(1).

90.    BOA's actions constitute a pattern and practice of behavior in conscious disregard of Plaintiff's rights.

91.    As a result of BOA's actions, BOA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees, including, but not limited to incurring costs and fees for the preparation and mailing the RFIs and emotional distress.

///

///

92.     Plaintiff restates and incorporates herein all of the statements and allegations contained in paragraphs 1 through 91 in their entirety, as if fully rewritten.

93.     12 C.F.R. § 1024.35(a) provides, in relevant part, that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

94.     NOE 1 included the name of the Plaintiff, identified the mortgage loan account, and as set forth above, detailed the error that occurred.

95.     12 C.F.R. 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A)     Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B)     Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such

documents, and contact information, including a telephone number, for further assistance.

Further, 12 C.F.R. § 1024.35(e)(3)(i) provides, in relevant part:

A servicer must comply with the requirements of paragraph (e)(1) of this section:

(A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)    For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

96.    Plaintiff sent NOE to BOA's Designated Address and was received by BOA within one week of mailing.

97.    NOE 1 constituted a notice of error as such term is defined in 12 C.F.R. § 1024.35(a).

98.    As detailed above, BOA failed to correct the errors, conduct a reasonable investigation that included a statement that BOA determined that no error occurred with the reasons or basis for such determination, or notify Plaintiff of a request for an extension of the time limit in violation of 12 C.F.R. §1024.35(e).

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

99.     BOA's actions in responding to NOE 1failed to meet the express, explicit requirements of either 12 C.F.R. 1024.35(e)(1)(i)(A) or 12 C.F.R. 1024.35(e)(1)(i)(B) within the time limits.

100.    BOA's actions in failing to provide proper response to NOE 1 constitutes a willful violations of 12 C.F.R. § 1024.35(e).

101.    BOA's actions constitute a pattern and practice of behavior in conscious disregard of Plaintiff's rights.

102.    As a result of BOA's actions, BOA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees, including, but not limited to incurring costs and fees for the preparation and mailing the NOE and emotional distress.

### SECOND CAUSE OF ACTION
### EQUIFAX'S VIOLATION OF THE FAIR CREDIT REPORTING ACT
### PLUS FOUR ACCOUNT

103.    Plaintiff restates and incorporates herein all of the statements and allegations contained in paragraphs 1 through 102 in their entirety, as if fully rewritten.

102.    In an Equifax credit report dated May 9, 2018, Equifax reported inaccurate information for Plaintiff's Bank of America, N.A. ("BOA") and Plusfour, Inc ("Plusfour") accounts.

103.   On or about August 10, 2018, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Equifax's reported information regarding misreported trade lines by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Equifax.

104.   Specifically, Plaintiff mailed a written dispute, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting disputed inaccurate and incorrect derogatory information be removed, corrected or deleted.

105.   Equifax was required to conduct an investigation into the disputed accounts pursuant to 15 U.S.C. § 1681i.

106.   Equifax thereafter failed to comply with its obligation to provide Plaintiff with the results of any "reinvestigation" pursuant to 15 U.S.C. § 1681i(a)(6) completed relating to the disputes raised in the Equifax Dispute Letter regarding Plaintiff's BOA and Plusfour accounts, instead declaring the accounts were "currently not reporting on the Equifax credit file".

107.   As a result of Equifax's failure to provide a consumer disclosure, Equifax negligently failed in its duties as required by and in violation of 15 U.S.C. § 1681i(a)(6).

108.   Further, Equifax willfully failed in its duties as required by and in violation of 15 U.S.C. § 1681i(a) when Equifax failed to provide written notice to Plaintiff of the results of a reinvestigation not later than 5 business days after the

completion of the reinvestigation (assuming an investigation was completed), by mail or, if authorized by the consumer for that purpose, by other means available to the agency. Indeed, Equifax failed to provide any evidence to Plaintiff it conducted any investigation into the BOA and Plusfour disputes raised in the Equifax Dispute Letter, thereby shirking Equifax's duties under the FCRA.

### SHELLPOINT ACCOUNT

109. On or about April 8, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 11-15252-leb (the "Bankruptcy").

110. In an Equifax credit report dated May 9, 2018, Shellpoint Mortgage Servicing ("Shellpoint") inaccurately reported Plaintiff's "date of last activity" (hereinafter "DLA") was January 2018. The DLA date should have been no later than the Bankruptcy filing date. Reporting a DLA later than the Bankruptcy filing date caused the DLA to remain on Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). This "re-aging" of the debt is illegally causing the trade line to remain on Plaintiff's credit report longer than legally permissible.

| Shellpoint Mortgage Servicing | | 59 Beattle Pl Ste 600 Greenville SC 29601-2165 : (484) 594-1038 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Rard | Activity Designator | Creditor Classification |
| 57161* | 01/03/2003 | $106,488 | | 15Y | Monthly | 20 | Paid and Closed | |

| Terms As of Date Reported | Balance Amount | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date Maj Del 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/31/2018 | $0 | | 01/2018 | | | | 01/2018 | | | | | 02/2018 |

Status - Pays As Agreed; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account; ADDITIONAL INFORMATION - Closed or Paid Account/Zero Balance; Real Estate Mortgage; Fixed Rate;

Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 04/18 | No Data Available | | | | | | | | |
| 03/18 | No Data Available | | | | | | | | |
| 02/18 | No Data Available | | | | | | | | |
| 01/18 | No Data Available | | | | | | | | |
| 12/17 | No Data Available | | | | | | | | |
| 11/17 | No Data Available | | | | | | | | |
| 10/17 | No Data Available | | | | | | | | |

111. On or about August 10, 2018, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Shellpoint's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Shellpoint.

112. Specifically, Plaintiff sent the Equifax Dispute Letter requesting the above inaccurate and incorrect derogatory information be removed, corrected, or deleted.

113. Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified Shellpoint of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

114. Defendant was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

115.   On or about August 30, 2018, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 8233070945) that Shellpoint and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6), and verified the account as "Updated".   However, the Shellpoint tradeline now included a "Scheduled Payment Amount" of $1,181 on an account also reported as "Paid and Closed".

| Shellpoint Mortgage Servicing | | 55 Beattie Pl Ste 600 Greenville SC 29601-2155 : (484) 594-1039 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account Number | | Date Created | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
| 57161* | | 01/03/2003 | $108,488 | $0 | 15 | Monthly | 20 | | Paid and Closed |
| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
| 08/29/2018 | $0 | $0 | 02/2018 | $0 | $1,181 | | | | $0 | | $0 | | 02/2018 |
| Status | | Type of Account | | Type of Loan | | Whose Account | | Portfolio Indicator | | Portfolio Status | | | |
| Pays As Agreed | | Mortgage | | Conventional Re Mortgage | | Individual Account | | | | | | | |
| ADDITIONAL INFORMATION: | | | | | | | | | | | | | |
| Closed or Paid Account/Zero Balance | | | | | | | | | | | | | |

116.   Since Shellpoint Account 57161 was paid off and the credit report shows a balance of $0 as of August 29, 2018, it was inaccurate, derogatory, and misleading to report a scheduled payment amount of $1,181.   There cannot be a scheduled payment amount when there is no debt owed.

117.   A reasonable investigation by Equifax would have indicated the debt was fully paid on or before August 29, 2018.

118.   Reporting an erroneous "scheduled payment amount" created a false presumption or implication Plaintiff had an outstanding debt and was committing monthly resources to service that debt, thereby jeopardizing and limiting Plaintiff's creditworthiness and harming Plaintiff's ability to obtain credit or diminish the amount of credit available to Plaintiff.

HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

119.    Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit report.

120.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

121.    Equifax failed to comply with industry standards.  Equifax failed to comply with the Metro 2 Format instructions and reported inaccurate information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

122.    Not only was Equifax's reporting inaccurate and a departure from the credit industry's own reporting standards, Equifax's reporting was also materially misleading under the CDIA's standards as well.

123.    A "materially misleading" statement is concerned with more than just an inaccurate statement.  It also includes omissions to credit entries, which in context create misperceptions about otherwise factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

124.    Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

125.   Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i(a).

126.   Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, Equifax still reported scheduled payment amounts on a closed account.

127.   Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681i(a).

128.   Due to Equifax's failure to reasonably investigate Plaintiff's dispute, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681e(b).

129.   Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. § 1681i(b). Specifically, Plaintiff requested that Equifax include a statement on Plaintiff's credit report stating that the instant account was disputed in the event Equifax failed to make the requested corrections identified in Plaintiff's Equifax Dispute Letter.

130.   Upon information and belief, Equifax failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note these accounts were disputed by Plaintiff and provide either Plaintiff's dispute

statements or a clear and accurate codification or summary of the disputes in violation of Equifax's statutory obligations under 15 U.S.C. § 1681i(c).

131. Reporting and re-reporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and re-reported has the tendency to confuse ordinary consumers like Plaintiff.

132. Despite Plaintiff's efforts to correct Equifax's erroneous and negative reporting in writing, Equifax neglected, refused, or failed to do so.

133. Equifax's continued inaccurate and negative reporting of the debts in light of its knowledge of the actual errors was willful. Plaintiff is, accordingly, eligible for statutory damages.

134. Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging Defendant's wrongful representations, damage to his creditworthiness, and emotional distress.

135. By inaccurately reporting account information relating to the debts after notice and confirmation of its errors, Equifax failed to take appropriate measures as required under 15 U.S.C. § 1681e(b).

**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

136.   The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

137.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

138.   As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

**FIRST CAUSE OF ACTION
BOA'S VIOLATION OF RESPA**

- Actual damages pursuant to 12 U.S.C. §2605(f)(1); 15 U.S.C. § 1681n(a)(1), and 15 U.S.C. §1681o(a)(1);

- Statutory damages pursuant to 12 U.S.C. § 2605(f)(2) and 15 U.S.C. § 1681n(a)(1) for each and every violation discussed above;

- Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

- Costs of litigation and reasonable attorney's fees pursuant to 12 U.S.C. §2605(f)(3), 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681o(a)(2); and

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- Any other legal or equitable relief the Court deems appropriate.

### SECOND CAUSE OF ACTION
### EQUIFAX'S VIOLATION OF THE FCRA

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

1                             **TRIAL BY JURY**

2     Pursuant to the Seventh Amendment to the Constitution of the United States

3 of America, Plaintiff is entitled to, and demands, a trial by jury.

4

5 Dated: February 12, 2019

6

7                          Respectfully submitted,

8

9                          /s/ Shawn W. Miller    .

10                          Shawn W. Miller, Esq.

11                          David H. Krieger, Esq.

12                          Haines & Krieger, LLC

13                          8985 S. Eastern Ave., Suite 350

14                          Henderson, NV 89123

15                          Attorney for Plaintiff

16                          *TRAVIS D. VANOOSTENDORP*

17

18

19

20

21

22

23

24

25

26

27

28